Donald Driscoll, SBN 95472
Adryane Omens, SBN 143126
Driscoll & Omens
P.O. Box 6596
Albany, California 94706
Telephone: (510) 527-4500
dond@driscoll-law.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, a minor, through his guardians ad litem, Mr. and Mrs. Doe, parents of John Doe,<br><br>                  Plaintiff,<br><br>vs.<br><br>ALBANY UNIFIED SCHOOL DISTRICT, ALBANY UNIFIED SCHOOL DISTRICT SCHOOL BOARD, and VALERIE WILLIAMS,<br><br>                  Defendants. | Case No. 3:17-cv-3418<br><br>COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES FOR VIOLATION OF RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS, TITLE VI, AND INTERFERENCE WITH CALIFORNIA FREE SPEECH RIGHTS<br><br>JURY DEMAND |

PARTIES

1.     Plaintiff John Doe (Doe) is a minor and appears through his parents and guardians ad litem, Mr. and Mrs. Doe. Doe is seventeen and, until recently, attended Albany High School in Albany, California. Doe, as described below, is presently in fear of retribution by students attending Albany High School and its continuation school, by the administration of Albany High School, and by the Albany community at large, and is using an anonym out of genuine concern for his safety.

2.     Defendant Albany Unified School District (AUSD) is a public school district of the State of California, located in Albany, California. It operates Albany High School.

COMPLAINT

3. Defendant Valerie Williams (Williams) is superintendent of AUSD. On information and belief, every act of Williams alleged in this complaint is also an act of AUSD.

4. Defendant Albany Unified School District School Board (School Board) is AUSD's public school board. Charles Black is president of the School Board and Kim Trutane is a member of the School Board. On information and belief, each act of Black and Trutane, and each act of AUSD alleged in this complaint (including each act of Williams) is also an act of the School Board.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

6. The events alleged in this complaint took place in Albany, California. Albany is in the Northern District of California. Venue is appropriate pursuant to 28 U.S.C. § 1391.

## FACTS

7. Instagram, launched in October, 2010, is a social networking application made for sharing images and videos and is optimized for use on cell phones.

8. Instagram allows users to upload images and videos, to "follow" other users, and to "like" or comment on postings to the site. "Following" allows a user to view the posts of another user. Instagram allows a user to make an account "private" so that only persons approved by the user can "follow" the user's account.

9. It is common for high school students to follow Instagram accounts and other media which contain matters that some might find offensive.

10. On information and belief, Instagram is a popular networking application at Albany High School. Many students have at least one primary account. In addition, it is common for students to have one or more "spam" Instagram accounts. On information and belief, "spam" accounts are often private accounts intended for low-value postings.

11. In 2016, C. created a "spam" Instagram account (C.'s Spam Account), and invited various people, including Doe, to follow the account. Over the next several months, C. posted various images to that account. Some of the postings were innocuous. Others were not.

12. Doe "followed" C.'s Spam Account and "liked" some of the images posted to it.

13. Albany High School is ethnically diverse. Doe is multiethnic and had friends at Albany High School of many ethnicities and races.

14. On or about March 17, 2017, five Albany High School students, including Doe, gathered at the house of one of the students. The group was diverse and included African American, Hispanic, and Asian students. Doe, feeling increasingly close to his friends in this group, decided to share C.'s Spam Account with A. and S. Both A. and S. laughed at the account's content. Doe did not share the content of the account with anyone else.

15. On or about Monday, March 20, 2017, a student who heard of C.'s Spam Account took the cell phone of an Albany High School student who followed the account. Acting without permission, that student accessed C.'s Spam Account and took pictures of the content of the account with her phone. The content of C.'s Spam Account consisted of data downloaded from Instagram's computer network. By operating the cell phone without permission, and by downloading data without permission, that student committed the crime of larceny under California Penal Code section 502.

16. On information and belief, that larceny was committed for the purpose of showing the images to Albany High School administrators. AUSD took no action against the student who committed the larceny. Plaintiff does not know whether AUSD directed or encouraged the criminal activity.

17. On or about March 20, 2017, someone showed the private, unlawfully obtained images to Albany High School administrators. An Albany High School administrator called Doe into an office and asked to see C.'s Spam Account.

18. On March 21 or 22, 2017, an administrator informed Doe that he would not be disciplined in connection with C.'s Spam Account but that the school wanted information about the account. Doe fully cooperated.

19. In the following days, parents of students whose images appeared on C.'s Spam Account repeatedly went to Albany High School. On information and belief, those parents demanded that disciplinary action be taken against any student who followed C.'s Spam Account.

20. On information and belief, in response to parent and community pressure, Williams decided to suspend all of the Albany High School students who had followed C.'s Spam Account, without regard to circumstances.

21. On information and belief, the students to whom Doe had initially shown C.'s Spam Account talked to Williams and urged her not to suspend Doe.

22. AUSD suspended Doe on March 23, 2017, for a period of two days (the First Suspension). The suspension ended on March 24, 2017.

23. AUSD did not tell Doe whether the First Suspension ended at the end of the school day or at the end of the calendar day. AUSD did not tell Doe that he was not to communicate with other students as part of the First Suspension.

24. During the First Suspension, A. initiated snapchats with Doe. Snapchats involve communications over the Snapchat application. Snapchat is a popular application for sending texts and videos which, in most instances, disappear a few seconds after being viewed.

25. After the end of the school day on March 24, 2017, A. asked Doe through Snapchat whether he had any other racist photos he could send her. Doe sent her a screenshot of a group chat from months earlier that contained a potentially offensive remark made by another student. Doe sent A. the screenshot because she was a friend and because she requested it.

26. Doe returned to school on Monday, March 27, 2017. When he returned, he was required to sit in the principal's office with his parents. Then Albany High School principal Jeff Anderson told Doe that the "fire" had gone out, and that Doe had "tossed gasoline on the fire" by responding to A.'s request for additional material. AUSD suspended Doe for an additional three days (the Second Suspension). The Second Suspension started on March 27, 2017, and ended on March 29, 2017.

27. On information and belief, instead of treating the suspensions as confidential matters AUSD leaked Doe's name to the entire student body, faculty, and staff of Albany High School, to members of the School Board and the community.

28. On information and belief, Black, Trutane, Williams, AUSD, and the School Board all knew that AUSD was suspending students for off-campus speech.

29. On March 23, 2017, Black, Williams, AUSD, and the School Board sent an email to Albany High School students and parents which said in part, "We are extremely disturbed by these photos and saddened that this occurred at AHS. Racially offensive and other hurtful behavior will not be tolerated at any of our schools."

30. On Sunday, March 26, 2017, school district administrators participated in an on-campus rally against the suspended students. On information and belief, at the rally a member of AUSD's African-American/Black Parent Engagement Committee spoke to the assembled crowd and called for the "sacrifice" of two or three of the students who followed C.'s Spam Account. Superintendent Williams also spoke at the event. She did not object to or comment on the inappropriate request for the sacrifice of students. Instead, she communicated her agreement by saying there would be "zero tolerance" and promising the crowd that there would be discipline.

31. At school assemblies held in late March, 2017, Albany High School administrators, teachers, and students denounced those students who had followed C.'s Spam Account as racists and "harmers." Students, including Doe, who had followed the account were identified by their initials. Administrators then announced that "black lives matter" and asked all students who agreed to step forward. On information and belief, this request was intended by administrators and understood by many students to be a request that they condemn the suspended students.

32. At a March 29, 2017, student assembly, AUSD permitted an Albany High School junior to perform a rap in front of the student body which identified many of the followers of C.'s Spam Account by their initials. Albany High School has approximately 1,200 students. Using the initials of students who followed C.'s Spam Account was sufficient to identify the students.

33. In the following days, administrators appeared in Albany High School classrooms to reinforce their "zero tolerance" policy. Using a script, they announced that any comment that offended anyone, even someone who overheard the comment, could be the basis for disciplinary action.

34. During in-class discussions, AUSD asked students to offer opinions as to the appropriate discipline for the students who had followed C.'s Spam Account. On information and

belief, AUSD intentionally led students to believe they were entitled to participate in determining the discipline for students who had followed C.'s Spam Account.

35. On or about March 28, 2017, Williams and then principal Anderson issued a statement posted to the AUSD website that referred to "[t]hese recent events" and said, "racist, sexist, discriminatory, or hate related speech and behavior will not be tolerated… we are grateful for the outpouring of support and advocacy for our students."

36. On the morning of March 30, 2017, Doe returned to school after the end of the Second Suspension. Administrators asked that Doe (and other students who had returned to school after suspension for activities related to C.'s Spam Account) attend a "restorative justice" session.

37. That same morning, AUSD administrators gathered Doe and students who were offended by C.'s Spam Account in a conference room at Albany High School.

38. Also that same morning, in a mass email intended to be sent to all Albany High School student and parents, Williams incorrectly described a broken rope swing in Memorial Park as a noose. This inflammatory and incorrect statement quickly swept through Albany High School. Emotions rose to a fevered pitch.

39. "Restorative justice," as generally used in a school context, refers to attempts to undo the harm that has come from alleged injustices.

40. As executed by AUSD administrators, "restorative justice" consisted of encouraging students who followed C.'s Spam Account to apologize while other students were allowed to condemn them. During the "restorative justice" session, students humiliated Doe and the others, yelled at them, insulted them, cursed them, and told them they were not sufficiently apologetic.

41. Doe and the other students who followed C.'s Spam Account were not allowed to communicate with anyone outside the room while the "restorative justice" session took place. The other students who were present were, however, allowed to communicate with people outside the room, and word spread quickly through the school that the meeting was underway.

42. The "restorative justice" session took place near the school's main lobby which is near the main entrance to the school. A predictable and dangerous situation rapidly developed. A

crowd of students gathered in the lobby, and another crowd of students gathered in front of the school.

43. As the crowd waited to confront Doe and the others, emotions intensified. Williams's reckless statement earlier in the day that a noose had been found worsened the situation. AUSD teachers allowed their students to leave class to join the crowd. AUSD and Williams did nothing to stop the gathering students, although they knew or should have known that it put Doe and other students at risk.

44. AUSD allowed one of the students who attended the "restorative justice" session to emerge and falsely announce to the crowd that Doe and the others had failed to apologize. AUSD made no attempt to explain differently.

45. AUSD administrators did nothing to calm or disperse the crowd. Instead, they paraded Doe and other students who had followed C.'s Spam Account in through the lobby. Students jeered, insulted, and humiliated Doe and the others.

46. Tensions continued to rise. Doe and the others who had followed C.'s Spam Account were trapped in the principal's offices. AUSD took no steps to allow Doe and the others to safely leave the premises.

47. The room in which Doe was confined had a window that faced the front of the school. Students from the crowd pressed hostile signs against the window.

48. Instead of counteracting the growing mob mentality, AUSD encouraged it. Teachers joined the crowd, even though school was in session. Trutane and Black arrived on campus.

49. Trutane spoke to the crowd gathered outside the school. She repeatedly promised the crowd that they could form a gauntlet through which the students would have to walk.

50. On information and belief, Williams, Black, Trutane, and AUSD intended to further discipline Doe by ostracizing and humiliating him.

51. M., a parent of one of the students who had followed C.'s Spam Account, came to the principal's office and begged for protection for herself and the students. Administrators refused her repeated requests. A police officer at the high school told Doe and the others that they had

gotten themselves into the situation, and were responsible for getting themselves out. At no time did AUSD administrators acknowledge their role in creating the chaos, or make any attempt to persuade the officer that Doe and the others needed protection.

52. On information and belief, Williams, Black, and Trutane made a conscious decision to align with the mob.

53. On information and belief, as 3:00 p.m. approached, AUSD administrators decided it was time for Doe and the others to leave. As Doe exited the building, a group of students attacked Doe. G. punched Doe in the face and broke Doe's nose.

54. On information and belief, the assault was caused by defendants' failure to take appropriate steps to protect Doe's safety and privacy, by defendants' public disciplining of Doe, and by defendants' decision to discipline Doe by ostracizing him and humiliating him.

55. That same day, subsequent to the attack, AUSD and Williams endorsed the violence by falsely describing the day's events as "peaceful" saying, "Today, there was a student sit-in. I want to assure our community that the students' voices are heard. They exercised their right to gather, speak their minds and share their concerns. They were respectful throughout the day."

56. Williams also emailed, "Today students at Albany High School peacefully demonstrated their solidarity against intolerance, racism, and hatred. Also on campus today, the students involved in an incident that occurred last week participated in a restorative justice process. What was made clear from these separate but related actions is that the student body stands together in its message that our school stands for inclusion."

57. On April 25, 2017, at a meeting of the School Board devoted to C.'s Spam Account and its aftermath, a student spoke to the School Board and endorsed the use of violence against the students who had followed C.'s Spam Account. On information and belief, neither at that meeting nor at any other time has any defendant publicly spoken against violence directed at Doe or other followers of C.'s Spam Account.

58. Through its actions, AUSD has intentionally sent a clear message to Albany High School students that abuse, public humiliation, and violence are all acceptable responses to perceived racism.

COMPLAINT
-7-

59. Through these actions and others, AUSD constructively expelled Doe from Albany High School. Doe cannot reasonably go back to Albany High School. His ability to form friendships in Albany has been limited. He incurred medical bills, and has incurred and is incurring tuition at a private school, and counseling bills. He has suffered physical injury and emotional distress.

60. Doe has been irreparably injured by defendants' actions, including by AUSD's suspension of him. That suspension is now part of his permanent student record and is likely to affect his future academic opportunities.

61. This Action is brought without prejudice to plaintiff's rights to seek monetary damages and bring a subsequent action or Amendment to this Complaint once his right to sue has been perfected under the California Government Tort Claims Act. Plaintiff specifically reserves that right.

FIRST CAUSE OF ACTION
Violation of First Amendment Rights
(42 U.S.C. § 1983)
By John Doe Against All Defendants

62. Plaintiff incorporates the allegations of the first 61 paragraphs of this complaint as though set forth in full.

63. Defendants suspended Doe for off-campus expressive activity protected by the First Amendment of the United States Constitution. They thereby violated Doe's First Amendment rights.

SECOND CAUSE OF ACTION
Violation of Title VI of the 1964 Civil Rights Act
(42 U.S.C. § 2000)
By John Doe Against all Defendants

64. Plaintiff incorporates the allegations of the first 63 paragraphs of this complaint as though set forth in full.

65. Defendants created a racially hostile environment.

66. None of the followers of C.'s Spam Account identified as African American. Defendants, in emails, meetings of the School Board, school assemblies, and teacher and administrator communications with students portrayed those who had followed the account as

racists and "harmers." Defendants failed to look for, consider, or communicate alternative, less inflammatory interpretations of the decisions of the various students to follow C.'s Spam Account.

67. Defendants reinforced the hostility by describing those who had followed C.'s Spam Account as "harmers" and by threatening to discipline anyone who said anything that offended anyone, while failing to discipline those who yelled racial taunts and obscenities, and harassed and threatened the followers of C.'s Spam Account.

68. Defendants had notice that a racially hostile environment existed. They failed to redress that racially hostile environment, instead deliberately fanning the flames of that hostility.

69. The racial harassment was severe, pervasive and persistent. Students were repeatedly encouraged to express their hostility against those who had followed C.'s Spam Account.

### THIRD CAUSE OF ACTION
### Violation of Fourteenth Amendment Rights
### Deprivation of Liberty
### By John Doe Against all Defendants

70. Plaintiff incorporates the allegations of the first 69 paragraphs of this complaint as though set forth in full.

71. AUSD is legally responsible for the safety of its students. AUSD, the School Board, and Williams disregarded this responsibility when they organized a restorative justice session at the school, during school hours, near the school lobby and main entrance to the school, where large crowds could and did congregate.

72. The natural consequence of the actions of AUSD, the School Board, and Williams was to deprive Doe of his right to liberty.

Doe was falsely imprisoned and could not safely leave the school. Although AUSD was responsible for Doe's safety, it did not take reasonable steps to protect him. AUSD's actions resulted in an assault on Doe.

## FOURTH CAUSE OF ACTION
### Violation of Fourteenth Amendment Rights
### Due Process of Law
### By John Doe Against All Defendants

73. Plaintiff incorporates the allegations of the first 72 paragraphs of this complaint as though set forth in full.

74. In California, a student may be suspended "only when other means of correction fail to bring about proper conduct." Educ. Code § 48900.5. There are narrow exceptions to this rule, including to prevent violence.

75. On information and belief, AUSD adopted a rule that "racism is violence." Doe was denied due process because AUSD relied on sloganeering rather than an actual analysis of whether there was violence—and there was none, except by students encouraged by AUSD, against Doe and others who had followed C.'s Spam Account. AUSD's decisions to suspend Doe were arbitrary and capricious and inconsistent with the discipline schedule established by the school.

## FIFTH CAUSE OF ACTION
### Violation of Fourteenth Amendment Rights
### Due Process
### Failure to Provide Notice and Hearing
### By John Doe Against All Defendants

76. Plaintiff incorporates the allegations of the first 75 paragraphs of this complaint as though set forth in full.

77. On March 27, 2017, AUSD imposed the Second Suspension on Doe based on the same matters which had been the basis for the First Suspension.

78. AUSD's decision to increase the number of days Doe was suspended was arbitrary and capricious and inconsistent with the discipline schedule established by the school.

79. The Second Suspension was imposed without allowing Doe or his parents notice and an opportunity to be heard. The decision denied Doe due process.

## SIXTH CAUSE OF ACTION
### Violation of Fourteenth Amendment Rights
### Substantive Due Process
### By John Doe Against All Defendants

80. Plaintiff incorporates the allegations of the first 79 paragraphs of this complaint as though set forth in full.

81. As forms of discipline, public denouncement, holding students up as the face of racism, ostracizing and humiliating them, and subjecting them to risk of assault are inconsistent with substantive due process.

82. Defendants, nonetheless, imposed those forms of discipline on Doe.

## SEVENTH CAUSE OF ACTION
### Interference with California Free Speech Rights
### (California Constitution and Cal. Educ. Code § 48950)
### By John Doe Against All Defendants

83. Plaintiff incorporates the allegations of the first 82 paragraphs of this complaint as though set forth in full.

84. Defendants suspended plaintiff based upon conduct protected by the California Constitution as well as the First Amendment.

85. Doe did not engage in any of the activity for which he was suspended while on campus, on the way to or from campus, or while involved in and off-campus student activity. His conduct was protected under the California Constitution and under Education Code sections 48907 and 48950.

## REQUEST FOR RELIEF

For these reasons, plaintiff asks for:

1. A declaration that, through the acts alleged in this complaint, defendants have violated plaintiff's constitutional rights under the first and fourteenth amendments;

2. Defendants and each of them be ordered to expunge any and all comments on Doe and Roe's academic records and their classroom grading from March 23, 2017 to the present, including but not limited to suspensions, marks by individual teachers for missed exams, marks resulting from failure to turn in homework

COMPLAINT
-11-

3. An injunction requiring defendants to remove the suspensions from plaintiff's records, and to refrain from any further disciplinary proceedings;

4. Damages, according to proof;

5. Punitive damages;

6. Costs of suit and a reasonable attorney fee pursuant to 42 U.S.C. § 1988; and,

7. All additional relief the Court deems appropriate.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands trial by jury in this action of all issues so triable.

Dated: June 13, 2017

/s/
Donald Driscoll
Adryane R. Omens
Driscoll & Omens
Attorneys for Plaintiff
PO Box 6596
Albany, California 94706
(510) 527-4500